(142 App. Div. 537.)

### DESMOND v. FOUNDATION CO.

(Supreme Court, Appellate Division, Second Department. January 27, 1911.)

MASTER AND SERVANT (§ 190*)—INJURY TO SERVANT—DETAILS IN WORK.

Where a hook furnished by a master to a servant was unsafe, if at all, only because liable to uncouple from hoisting tackle, and the master supplied a sufficiency of wire for "mousing" the hook so that it could not uncouple, the master was not liable for an injury to a servant caused by failure to so prepare the hook, resulting in its fall, notwithstanding he followed the directions of the foreman.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

Appeal from Trial Term, Kings County.

Action by Frank Desmond against the Foundation Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

E. Clyde Sherwood (Edward J. Redington, on the brief), for appellant.

Elmer S. White, for respondent.

CARR, J. The plaintiff has recovered judgment against the defendant for the sum of $1,276.78 damages for a personal injury alleged to have been caused by the negligence of the defendant, from which defendant appeals. Plaintiff was an employé of the defendant, which at the time of the accident on January 24, 1907, was engaged in the work of constructing concrete piers as a part of the foundation of a large office building in New York City. The injuries resulted from the fall of a large iron hook, which struck the plaintiff on the head. This hook had been used as a part of the appliances by which a large timber form was lowered upon a partly constructed concrete pier. The plaintiff had nothing to do with the operation of the hoisting appliances, but was engaged in special work about the concrete pier and beneath the hoisting tackle. There was some controversy at the trial as to whether the hook which struck the plaintiff fell upon him by becoming uncoupled from the hoisting tackle after the form had been lowered and the tackle slackened, or whether it fell upon him by being knocked off the timber form after it had been uncoupled by a fellow servant. The jury found evidently that the hook in question fell from the tackle itself. The plaintiff claims that the hook was not reasonably safe for the use to which it was put, and bases his claim of the master's liability on negligence in failing to furnish

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

reasonably safe appliances. According to the plaintiff's proofs, it had been the custom on this work to use a double set of hooks, one of which was connected with either end of the timber form when it was to be hoisted or lowered. When the time came to lower the timber form in question, at the time of the accident, defendant's, foreman, one Snyder ordered one of the riggers, one O'Neil, to go to the rigging house and procure the necessary hooks. O'Neil went to the rigging house, and failed to find a set of hooks suitable for use. He returned and notified Snyder, who thereupon directed him to go back and get "something" for the purpose. O'Neil returned with a single iron hook, which Snyder directed to be inserted in the tackle and used in place of a set of hooks. O'Neil swears that he protested against the use of a single hook unless it was "moused" on the ground that, when a slack came in the fall of the hoisting tackle, the hook was likely to become uncoupled, and fall. He further testifies that Snyder paid no attention to the protest, but directed the immediate use of the appliances as they were, and without any "mousing" of the hook in question. The process of mousing consisted of looping together one point of the hook and its shank with wire or stout string, to close the opening between the hook end and the hook shank, thus preventing any accidental uncoupling when the strain on the tackle was loosened. O'Neil testified that the mousing of the hook was but a matter of a few minutes labor, and that there was ample material available in the rigging house for that purpose, and that mousing would prevent necessarily any accidental uncoupling.

The hook in question proved suitable for the use to which it was put. As a hook it was in no way defective, except as to liability of uncoupling, and this defect could have been absolutely overcome by its being moused. The sole question of law involved is whether the act of Snyder, the defendant's foreman, in directing its use without mousing, is imputable to the master. This action was brought at common law, and is to be determined accordingly, without reference to the employer's liability act of 1900.

The appellant contends that the case at bar falls clearly within the ruling in Vogel v. American Bridge Co.,.180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725, while the respondent asserts that it is governed by Pluckham v. American Bridge Co., 104 App. Div. 404, 93 N. Y. Supp. 748, s. c. 186 N. Y. 561, 79 N. E. 1114. In the Vogel Case, ut supra, it was held that when a master had furnished sufficient suitable rope for the use of its employés, and its foreman had directed some of its laborers to use a piece of rope concededly unfit and dangerous, the act of the foreman was but a detail in the carrying on of the work, and could not be so imputed to the master as to impose liability. In the Pluckham Case, ut supra, the master was held chargeable with negligence under the following circumstances: In doing some of its work it was necessary to use some rope, and some was furnished by the master for the required purpose. The workmen thought this rope not strong enough for the strain, and so stated to the foreman. He sent a laborer to get another piece of rope, who returned, stating that he could find none, whereupon the foreman directed the men to go on with the

use of such rope as they had, and on their compliance with this direction the rope broke, and the accident happened. It was there held that the act of the foreman in directing the men to proceed was but a contributing cause to the accident, and that the proximate cause thereof was the failure of the master to furnish reasonably safe appliances. There is no conflict in the rules announced in either of these authorities, each applying to its own state of facts. The respondent argues that the facts of the case at bar require an application of the rule declared in the Pluckham Case, on the theory that the defendant was negligent in not having available for use at the time of the accident a set of double hooks, such as it had been using generally during the progress of the work. There was a controversy at the time as to whether double hooks or single hooks had been used generally during the work. In any event, the hook actually used at the time of the accident was defective or unsafe, if at all, only in relation to a possible uncoupling. The master, however, had supplied a sufficiency of material to make it safe, which was not at all so in the Pluckham Case. Whatever unsafety there was about this hook arose from an omission to mouse it with the materials available in the rigging house. This mousing was a detail in the work of hoisting and lowering the timber forms, and we think the case at bar falls within the rule applied in the Vogel Case, ut supra.

The judgment and order should be reversed and a new trial granted, costs to abide the event. All concur.